Mobassa **BOYD**, Petitioner–Appellant,

v.

Anthony C. **NEWLAND**, Warden, Respondent–Appellee.

No. 03–17098.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 4, 2004.

Filed Dec. 29, 2004.

Mark E. Eibert, Half Moon Bay, CA, for the petitioner-appellant.

Glenn R. Pruden, Deputy Attorney General, State of California, San Francisco, CA, for the respondent-appellee.

Before: CUDAHY,* GRABER, and FISHER, Circuit Judges.

GRABER, Circuit Judge:

In this case, the California courts denied Petitioner's *Batson*[1] motion; denied his request for a free transcript of the entire voir dire for use on appeal; and enhanced his sentence because of a nonjury juvenile adjudication. We must ask whether any of those rulings was contrary to, or unreasonably applied, clearly established federal law as determined by the Supreme Court. Because we answer "no," we affirm the district court's denial of habeas corpus relief.

## FACTUAL AND PROCEDURAL HISTORY

Petitioner, Mobassa Boyd, is African–American. He was charged in California with unlawfully possessing a firearm after having previously suffered a juvenile adjudication for a felony, Cal.Penal Code § 12021(e), and with unlawfully possessing a sawed-off shotgun, *id.* § 12020(a)(1).

---

* The Honorable Richard D. Cudahy, Senior Judge, United States Court of Appeals for the Seventh Circuit, sitting by designation.

1. *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

During voir dire, the prosecutor used a peremptory strike to excuse an African–American prospective juror. Petitioner's counsel made a *Batson* motion, asserting that the strike was race-based.[2] Counsel said only this: "There was nothing that I could glean in the responses [of the potential juror to voir dire questions] which would lead me to believe that there was sort have [sic] any tangible reasons whereby someone might excuse her as being a potentially partial juror." At the time of the disputed peremptory challenge, another African–American potential juror had been stricken for cause; two other African–Americans remained as potential jurors; and the prosecutor had used two other peremptory challenges on non-African-American jurors. The trial court denied the motion, finding that Petitioner's "showing falls short of showing a prima facie case" of racial bias in the prosecutor's use of the peremptory challenge.

The jury that eventually was empaneled convicted Petitioner. Petitioner waived his right to have a jury determine the truth of his prior juvenile adjudication. The trial court found the juvenile adjudication to be true and, accordingly, increased Petitioner's sentence from three to six years. Cal.Penal Code §§ 667(d)(3), 1170.12(b)(3).

Petitioner filed three requests to supplement the record to include the entire voir dire transcript. The California Court of Appeal granted Petitioner's requests in part and required that he be provided the voir dire of the excused African–American juror plus his counsel's argument under *Batson*. But the Court of Appeal denied Petitioner's requests for the entire voir dire transcript because he did not comply with a California local rule that requires a defendant to "establish with some certainty how the requested materials may be useful on appeal." Cal. Ct.App., First App. Dist. Local Rule 6(d) (2003). The court also relied on controlling California precedent, which does not require a court to provide a defendant with an entire voir dire transcript free of charge. *See People v. Landry*, 49 Cal.App.4th 785, 56 Cal. Rptr.2d 824, 828 (Ct.App.1996) (holding that when the purpose of the request is to compare the testimony of jurors, but no such comparison was made at the trial level, a court need not provide a free voir dire transcript).

On direct appeal to the California Court of Appeal, Petitioner challenged the denial of his *Batson* motion. The Court of Appeal affirmed Petitioner's conviction, and the California Supreme Court denied his petition for review without comment.[3] After exhausting state-court post-conviction procedures without success, Petitioner petitioned for a writ of habeas corpus in federal district court. The district court denied his petition. Petitioner now appeals to us.

## STANDARD OF REVIEW

■ We review de novo a denial of a petition for habeas corpus. *Dubria v.*

**2.** Petitioner's counsel challenged the peremptory strike under *People v. Wheeler*, 22 Cal.3d 258, 148 Cal.Rptr. 890, 583 P.2d 748 (Cal. 1978). *Wheeler* prohibits, under the California Constitution, the use of racially motivated peremptory challenges. *Id.* at 761–62. A *Wheeler* motion serves as an implicit objection under *Batson, People v. Yeoman*, 31 Cal.4th 93, 2 Cal.Rptr.3d 186, 72 P.3d 1166, 1188 (Cal.2003), *cert. denied,* —— U.S. ——, 124 S.Ct. 2018, 158 L.Ed.2d 497 (2004), so Peti-

tioner preserved his federal constitutional claim. Accordingly, we refer to counsel's objection as a *Batson* motion.

**3.** Under AEDPA, we review the last reasoned state-court decision. *Brodit v. Cambra*, 350 F.3d 985, 987 (9th Cir.2003). Accordingly, we examine the California Court of Appeal's decision here.

**1012**

*Smith,* 224 F.3d 995, 1000 (9th Cir.2000) (en banc).

We may not disturb a state court's determination unless it "was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *Clark v. Murphy,* 331 F.3d 1062, 1067 (9th Cir.), *cert. denied,* 540 U.S. 968, 124 S.Ct. 446, 157 L.Ed.2d 313 (2003). AEDPA imposes a "highly deferential standard for evaluating state-court rulings." *Lindh v. Murphy,* 521 U.S. 320, 333 n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997).

## DISCUSSION

### A. *Batson Claim*

■ To succeed on his charge of racial bias, Petitioner first must establish a prima facie case of purposeful discrimination. *Batson,* 476 U.S. at 93–94, 106 S.Ct. 1712; *Tolbert v. Page,* 182 F.3d 677, 680 (9th Cir.1999) (en banc). He must show that (1) the prospective juror is a member of a "cognizable racial group," (2) the prosecutor used a peremptory strike to remove the juror, and (3) the totality of the circumstances raises an inference that the strike was motived by race. *Batson,* 476 U.S. at 96, 106 S.Ct. 1712; *Cooperwood v. Cambra,* 245 F.3d 1042, 1045–46 (9th Cir. 2001). If he failed to establish a prima facie case, then the motion properly was denied; the prosecutor need not have provided a race-neutral explanation for the strike. *Batson,* 476 U.S. at 96–97, 106 S.Ct. 1712; *Cooperwood,* 245 F.3d at 1046.

The first and second elements of the test are met, because the prospective juror is African–American, and the prosecutor used a peremptory strike to remove the juror. Only the third element of the prima facie case is at issue, that is, whether the state court erred in failing to recognize an inference of racial motivation.

Petitioner first argues that the California Court of Appeal's decision was "contrary to" federal law, 28 U.S.C. § 2254(d)(1), because the court used an incorrect legal standard in determining whether he had made out a prima facie case. If he were correct, we would not defer to the state court. *See Wade v. Terhune,* 202 F.3d 1190, 1195 (9th Cir. 2000) (holding that when the state court uses the wrong legal standard, the rule of deference does not apply). But we read the state court's decision differently.

■ In affirming the trial court's ruling on the peremptory strike, the California Court of Appeal wrote that Petitioner had not shown a "strong likelihood" that the prosecutor's challenge had been motivated by racial considerations. The "strong likelihood" wording originates from *Wheeler,* the California equivalent of *Batson,* and the *Wheeler* standard places on the defendant a more onerous burden of proof than that required by the "raise an inference" standard of *Batson. See Wade,* 202 F.3d at 1192 ("We hold that the *Wheeler* standard, as currently interpreted by the California courts, does not satisfy the constitutional requirement laid down in *Batson.*").

But the California court did not stop there. It also held that Petitioner "clearly did not establish a prima facie case of group discrimination, even under federal precedent." In other words, the Court of Appeal did not rely only on the *Wheeler* standard, instead holding that Petitioner had failed to establish a prima facie case under *either* state *or* federal law. Because the Court of Appeal recognized the difference between the two standards, and affirmed the trial court under both, its determination deserves deference. *See Tolbert,* 182 F.3d at 682–83 (describing deference

owed to state court's prima facie determination under *Batson* ).

Petitioner also argues that the California courts were wrong to conclude that he had failed to establish a prima facie case under *Batson.* We are not persuaded that the Court of Appeal applied *Batson* unreasonably.

▆▆▆ The disputed peremptory strike was the prosecutor's third, but the first used to dismiss an African–American prospective juror. Additionally, two African–Americans remained in the pool after the use of this strike. Although "the Constitution forbids striking even a single prospective juror for a discriminatory purpose," the fact that an African–American potential juror was stricken does not, by itself, suggest racial bias. *United States v. Vasquez–Lopez,* 22 F.3d 900, 902 (9th Cir. 1994); *Wade,* 202 F.3d at 1198. Even the use of two peremptory strikes against members of a cognizable minority group does not necessarily suffice to constitute a prima facie showing of bias. *Fernandez v. Roe,* 286 F.3d 1073, 1078 (9th Cir.2002); *United States v. Chinchilla,* 874 F.2d 695, 698 (9th Cir.1989).

▆▆▆ On appeal, Petitioner repeats the claim he made at trial—that no nonracial reason existed for the peremptory challenge. To the contrary, the Court of Appeal listed several race-neutral grounds that appeared in the juror's responses on voir dire. For example, the juror expressed ambivalence about the justice system, saying "it's fair in some cases; depends on the case." As another example, the juror "sound[ed] a little hesitant" when asked whether missing work would distract her. Evidence in the record of objective reasons to strike a juror implies that racial bias did not motivate the prosecutor. *See Paulino v. Castro,* 371 F.3d 1083, 1091–92 (9th Cir.2004) ("While we may consider whether the record contains en-

tirely plausible reasons, independent of race, why a prosecutor may have exercised peremptories, such reasons have usually helped persuade us that defendant made no prima facie showing where defendant challenged the excusal of *just one juror.*" (emphasis added) (citation and internal quotation marks omitted)); *Wade,* 202 F.3d at 1198 (noting that "entirely plausible reasons, independent of race," for striking a juror support a finding that the prosecutor did not act based on racial bias). In the circumstances, the state court did not apply federal law unreasonably when it held that Petitioner had failed to make a prima facie showing under *Batson.*

#### B. *Voir Dire Transcript*

Petitioner next argues that the California Court of Appeal unreasonably applied federal law, and violated his rights to due process and equal protection, when the court denied his requests for a transcript of the entire voir dire, free of charge, so that he could prepare his *Batson* claim. Petitioner contends that *Batson* requires a comparative analysis of all jurors in every case and that, as an indigent defendant, he has an absolute right to the entire trial transcript. We will consider each claim in turn.

#### 1. *Comparative Juror Analysis*

▆▆▆ "Comparative juror analysis" refers, in this context, to an examination of a prosecutor's questions to prospective jurors and the jurors' responses, to see whether the prosecutor treated otherwise similar jurors differently because of their membership in a particular group. *See, e.g., Miller–El v. Cockrell,* 537 U.S. 322, 331–33, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003) (engaging in comparative juror analysis); *Mitleider v. Hall,* No. 03–56097, 2004 WL 2827660, at *8 n. 9 (9th Cir.

Dec.10, 2004) (conducting a comparative juror analysis to discern whether differing life experiences justified the use of a peremptory strike against an African–American juror in a case in which a prima facie showing had been made). California courts do not entertain comparative juror analysis for the first time on appeal. *See People v. Johnson,* 30 Cal.4th 1302, 1 Cal. Rptr.3d 1, 71 P.3d 270, 284 (2003) ("[W]e do not believe that comparative juror analysis for the first time on appeal is constitutionally compelled."), *cert. dismissed,* 541 U.S. 428, 124 S.Ct. 1833, 158 L.Ed.2d 696 (2004). Instead, a defendant must present a 17522 comparative juror analysis to the trial court to preserve the issue for review:

When the objecting party presents comparative juror analysis to the trial court, the reviewing court must consider that evidence, along with everything else of relevance, in reviewing, deferentially, the trial court's ruling. When such an analysis was not presented at trial, a reviewing court should not attempt its own comparative juror analysis for the first time on appeal, especially when, as here, the record supports the trial court's finding of no prima facie case.

*Id.* at 285; *see also Batson,* 476 U.S. at 98 n. 21, 106 S.Ct. 1712 (explaining that "a reviewing court ordinarily should give[the trial court's] findings" great deference in the context of deciding, at the final step of the analysis, whether the defendant has established purposeful discrimination); *Kesser v. Cambra,* 392 F.3d 327 (9th Cir. Dec.16, 2004) (declining to undertake, or direct the district court to undertake, a comparative juror analysis at the third *Batson* step, when a record supporting a comparative juror analysis had not been developed in the state court proceeding).

■ Petitioner challenges the preservation requirement, and its application to him, on both practical and theoretical grounds. As a practical matter, Petitioner argues, California's preservation requirement places him in an untenable position: he cannot show that a comparative juror analysis took place at the trial court without a full transcript of the voir dire, but he cannot obtain a complete transcript unless he shows that the trial court engaged in comparative juror analysis.

The dilemma is not as stark as Petitioner suggests. Both Petitioner and his trial counsel attended the whole voir dire. They know whether counsel did anything other than argue the absence of objective reasons to strike the one juror in question and whether a comparative juror analysis would have helped or hindered Petitioner's bare *Batson* claim. Yet neither presented an affidavit with Petitioner's requests to augment the record, suggesting that Petitioner had sought, or that the trial court had engaged in, a comparative juror analysis. California precedent requires nothing more difficult than that.

On a more theoretical level, Petitioner asserts that an appellate court must engage in comparative juror analysis to decide every *Batson* motion. To support his assertion, Petitioner points to *Batson* itself. There, the Supreme Court enumerated several ways for a defendant to establish a prima facie case of racial discrimination:

For example, a "pattern" of strikes against black jurors included in the particular venire might give rise to an inference of discrimination. Similarly, the prosecutor's questions and statements during *voir dire* examination and in exercising his challenges may support or refute an inference of discriminatory purpose. *These examples are merely illustrative.*

476 U.S. at 97, 106 S.Ct. 1712 (emphasis added). The *Batson* opinion contemplates that numerous avenues exist for establish-

ing a prima facie case in the trial court, only one of which involves comparative juror analysis. And, the opinion makes no mention of comparative juror analysis at the appellate level. So *Batson* does not clearly establish a requirement of comparative juror analysis on appeal.

More recently, the Supreme Court assessed whether the Fifth Circuit properly denied a certificate of appealability in a case involving a *Batson* claim, and the Court held that a certificate should have been granted. *Miller–El*, 537 U.S. at 322, 123 S.Ct. 1029.[4] Miller–El had presented to the state trial court comparative evidence, which the Court then analyzed.[5] *Id.* at 331–35, 123 S.Ct. 1029. But the Court did not, and did not require an appellate court to, conduct a comparative juror analysis in the first instance. Also, the Court was analyzing the race-neutral reasons that the prosecutor proffered after conceding the defendant's prima facie case, rather than analyzing a prima facie case. *Id.* at 343, 123 S.Ct. 1029. Because *Miller–El* did not decide anything about how to establish a prima facie case, or about how to examine a prima facie case on appeal, it cannot stand for the proposition that comparative juror analysis is required to be done for the first time on appeal.

In summary, Supreme Court precedent does not require courts to engage in comparative juror analysis for the first time on appeal. We, therefore, find no error.

### 2. Transcript as a Matter of Right

■ In the alternative, Petitioner argues that, as an indigent defendant, he was entitled to an entire trial transcript as a matter of right. *See Britt v. North Carolina*, 404 U.S. 226, 227, 92 S.Ct. 431, 30 L.Ed.2d 400 (1971) ("[T]he state must provide an indigent defendant with a transcript of prior proceedings when that transcript is needed for an effective defense or appeal."); *cf. Kennedy v. Lockyer*, 379 F.3d 1041, 1057 (9th Cir.2004) (holding that clearly established Supreme Court precedent requires the state to provide an indigent defendant with a full transcript of the entire trial court proceeding for use in a second trial), *petition for cert. filed*, 73 U.S.L.W. 3324 (U.S. Nov. 15, 2004) (No. 04–679). An applicable California rule requires an indigent defendant to "establish with some certainty how the requested materials may be useful on appeal" before it will provide a transcript free of charge.[6] The Court of Appeal relied on that rule when it denied in part Petitioner's requests to augment the record. Neither

---

4. On remand, the Fifth Circuit rejected Miller–El's *Batson* claim on the merits. *Miller–El v. Dretke*, 361 F.3d 849 (5th Cir.2004). The case has returned to the Supreme Court. *See Miller–El v. Dretke*, —— U.S. ——, 124 S.Ct. 2908, 159 L.Ed.2d 811 (2004) (granting petition for certiorari).

5. Miller–El's trial occurred before *Batson*, which was decided during the pendency of his appeal. *Miller–El*, 537 U.S. at 328, 123 S.Ct. 1029. Consequently, Miller–El's case was remanded to the trial court to determine whether he had shown purposeful discrimination under *Batson*. He presented a much more extensive comparative juror analysis in the post-trial hearing. Here, Petitioner's trial oc-

curred after *Batson*, yet he does not claim that he presented any comparative juror analysis at trial.

6. In pertinent part, the rule provides:

A motion to augment the reporter's transcript shall identify the portion of the record with specificity, including the reporter and date of hearing. It shall establish with some certainty how the requested materials may be useful on appeal. Requests for jury voir dire should specify the exact questioning by which counsel of which juror together with the reason justifying the request. Cal. Ct.App., First App. Dist. Local Rule 6(d) (2003).

that rule nor its application here violates clearly established Supreme Court law.

■■■ A court need only provide an indigent defendant with "a record of sufficient completeness" to prepare an appeal; irrelevant or extraneous portions of the transcript may be omitted. *Mayer v. City of Chicago,* 404 U.S. 189, 194–95, 92 S.Ct. 410, 30 L.Ed.2d 372 (1971). Petitioner had the transcript of the challenged juror's voir dire, his counsel's argument, and the court's ruling; he provided the state court with no specific rationale for needing more. Although the Court has found constitutional error where a court has failed to provide an indigent defendant with certain parts of trial transcripts on appeal, it has never compelled a state court to provide an entire voir dire transcript. *See, e.g., Britt,* 404 U.S. at 228, 92 S.Ct. 431 (stating that the transcript of a prior mistrial ordinarily can be assumed to be valuable to a defendant, although ultimately finding no error because an alternative to the transcript existed); *Williams v. Oklahoma City,* 395 U.S. 458, 458–59, 89 S.Ct. 1818, 23 L.Ed.2d 440 (1969) (per curiam) (finding constitutional error where the state provided *no* trial transcript to an indigent defendant on appeal); *Gardner v. California,* 393 U.S. 367, 371, 89 S.Ct. 580, 21 L.Ed.2d 601 (1969) (holding that the indigent defendant had to be provided with a transcript of an evidentiary hearing from his original trial, so that he could file a new habeas petition); *Long v. Dist. Court of Iowa,* 385 U.S. 192, 192–94, 87 S.Ct. 362, 17 L.Ed.2d 290 (1966) (per curiam) (holding that a court's failure to provide a defendant with *any* portion of a habeas transcript was error). A fortiori, the Supreme Court has never compelled a state court to provide an entire voir dire transcript in the absence of a good reason for requiring it.

More importantly, the Supreme Court has upheld a federal statute that is similar to California's local rule 6(d). In *United States v. MacCollom,* 426 U.S. 317, 322–23, 96 S.Ct. 2086, 48 L.Ed.2d 666 (1976), the Court held that a statute requiring a judge to make a finding that a habeas petition is not frivolous and that a transcript is needed, before providing an indigent defendant with a trial transcript, does not violate the United States Constitution.

In short, the California rule requiring an indigent defendant to show a specific need to obtain a complete voir dire transcript does not run counter to clearly established federal law. Petitioner is not entitled, as a matter of right, to an entire trial transcript, and we must defer to the state court's finding that he did not make the showing contemplated by the local rule.

### C. *Nonjury Juvenile Adjudication*

■■■ Finally, Petitioner contends that the state court violated clearly established federal law by using a nonjury juvenile adjudication to increase his sentence from three to six years. In *Apprendi v. New Jersey,* 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), the Supreme Court held that, "[o]ther than the fact of *a prior conviction,* any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (Emphasis added.) Petitioner argues that a juvenile adjudication does not qualify as a "conviction" under the *Apprendi* exception.

■■■ We have held that the *Apprendi* "prior conviction" exception encompasses only those proceedings that provide a defendant with the procedural safeguards of a jury trial and of proof beyond a reasonable doubt. *United States v. Tighe,* 266 F.3d 1187, 1194 (9th Cir.2001). Consequently, we do not recognize nonjury juvenile adjudications as "convictions" falling within the *Apprendi* exception, and ordi-

narily we do not allow sentencing enhancements based on such adjudications. *Id.* at 1194–95.

California courts disagree with *Tighe.* They conclude that *Apprendi* does not preclude the use of nonjury juvenile adjudications to enhance the sentence of an adult offender. *See, e.g., People v. Bowden,* 102 Cal.App.4th 387, 125 Cal.Rptr.2d 513, 517 (Ct.App.2002) ("[T]he *Tighe* majority opinion is unpersuasive, and we decline to follow or extend its reasoning in the context of the Three Strikes law."). *But see People v. Smith,* 110 Cal.App.4th 1072, 1 Cal. Rptr.3d 901, 907–29 (Ct.App.2003) (Johnson, J., concurring in part and dissenting in part) (relying on *Tighe* to argue against the use of a prior nonjury juvenile conviction to enhance a defendant's sentence). Likewise, the Third and Eighth Circuits have held that the *Apprendi* "prior conviction" exception includes nonjury juvenile adjudications, which can be used to enhance a defendant's sentence. *United States v. Jones,* 332 F.3d 688, 696 (3d Cir.2003) (stating that "we find nothing in *Apprendi* or *Jones,* two cases relied upon by the *Tighe* court . . ., that requires us to hold that prior nonjury juvenile adjudications that afforded all required due process safeguards cannot be used to enhance a sentence"), *cert. denied,* 540 U.S. 1150, 124 S.Ct. 1145, 157 L.Ed.2d 1044 (2004); *United States v. Smalley,* 294 F.3d 1030, 1033 (8th Cir.2002) ("We therefore conclude that juvenile adjudications can rightly be characterized as 'prior convictions' for *Apprendi* purposes, and that the district court did not err in increasing [the defendant's] sentence based on his prior juvenile adjudications."), *cert. denied,* 537 U.S. 1114, 123 S.Ct. 870, 154 L.Ed.2d 790 (2003); *cf.* Note, *Constitutional Law—Right to Jury Trial—Eighth Circuit Holds an Adjudication of Juvenile Delinquency to Be a "Prior Conviction" for the Purposes of Sentence Enhancement at a*

*Subsequent Criminal Proceeding,* 116 Harv. L.Rev. 705, 708 (2002) (comparing various circuits' approaches and suggesting that "*Tighe's* understanding of the jury trial right is more consistent with the implications of the Supreme Court's recent jury trial jurisprudence"). To date, the Supreme Court has not resolved the conflict.

Although we are not suggesting that *Tighe* was incorrectly decided, as these varying interpretations of *Apprendi* suggest, the opinion does not represent clearly established federal law "as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). In general, Ninth Circuit precedent remains persuasive authority in determining what is clearly established federal law. *See Duhaime v. Ducharme,* 200 F.3d 597, 600–01 (9th Cir. 1999) (stating that Ninth Circuit case law may be used to help determine clearly established federal law). But, in the face of authority that is directly contrary to *Tighe,* and in the absence of explicit direction from the Supreme Court, we cannot hold that the California courts' use of Petitioner's juvenile adjudication as a sentencing enhancement was contrary to, or involved an unreasonable application of, Supreme Court precedent.

AFFIRMED.